RECORD NO. 14-2324

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

SEA "B" MINING COMPANY,
c/o HealthSmart Casualty Claims Solutions,

*Petitioner,*

v.

SHIRLEY ADDISON, widow of Jerry Addison, deceased;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

APPEAL FROM AN ORDER OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

**OPENING BRIEF OF PETITIONER**

Timothy W. Gresham
Penn, Stuart & Eskridge
208 East Main Street
Post Office Box 2288
Abingdon, Virginia 2421-2288
(276) 623-4408

*Counsel for Petitioner*
*Sea "B" Mining Company*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2324__     Caption: __Sea "B" Mining Co. v. Shirley Addison widow of Jerry Addison__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Sea "B" Mining Company__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☑YES ☐NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
     Thames Development, LTD; Pittston Coal Company; Pittson Minerals Group, Inc.; The Brinks Company

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☑YES ☐NO
     If yes, identify all such owners:
     The Brinks Company indirectly owns 100% of the stock of Sea "B" Mining Company

10/28/2013 SCC                                    - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Timothy W. Gresham                     Date:     12/15/2014

Counsel for: Sea "B" Mining Company

## CERTIFICATE OF SERVICE
****************************

I certify that on     12/15/2014     the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Shirley J. Addison
P.O. Box 647
Pounding Mill, VA  24637

s/Timothy W. Gresham                                        12/15/2014
(signature)                                                              (date)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE
      JURISDICTION ...............................................................................1

II.   STATEMENT OF THE ISSUES .......................................................2

III.  STATEMENT OF THE CASE ..........................................................3

IV.   STATEMENT OF FACTS .................................................................8

V.    SUMMARY OF ARGUMENT ........................................................18

VI.   ARGUMENT....................................................................................20

      A.    STANDARD OF REVIEW ...................................................20

      B.    THE ALJ IMPROPERLY EXCLUDED PROBATIVE EVIDENCE
            AND FAILED TO SATISFY HIS DUTY TO CONSIDER ALL
            RELEVANT EVIDENCE...................................................20

      C.    THE ALJ ERRED BY SELECTIVELY ANALYZING THE
            EVIDENCE, RELYING ON IRRELEVANT STATEMENTS IN
            THE PREAMBLE, AND RESOLVING MEDICAL DISPUTES BY
            HEADCOUNT ...................................................................27

            1.  The ALJ selectively analyzed the medical opinion evidence and
                relied on irrelevant portions of the preamble to find Addison
                suffers from legal pneumoconiosis ..................................27

            2.  Judge Henley erred in finding Addison suffers from clinical
                pneumoconiosis by engaging in a headcount, and failing to fulfill
                his obligation under the APA for reasoned decision making ........34

VII.  CONCLUSION.................................................................................36

VIII. REQUEST FOR ORAL ARGUMENT.......................................37

IX.    CERTIFICATE OF COMPLIANCE .............................................................38

X.    CERTIFICATE OF SERVICE ....................................................................39

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Director, OWCP*,
  958 F.2d 49 (4th Cir. 1992) .......................................................... 35

*Cornett v. Benham Coal*,
  227 F.3d 569 (6th Cir. 2000) ........................................................ 31

*Dehue Coal Co. v. Ballard*,
  65 F.3d 1189 (4th Cir. 1995) ........................................................ 20

*Director, OWCP v. Rowe*,
  710 F.2d 251, 255 (6th Cir. 1983) ................................................ 24

*Eastover Mining Co. v. Williams*,
  338 F.3d 501 (6th Cir. 2003) ........................................................ 24

*Fields v. Island Creek Coal Co.*,
  10 BLR 1-19 (1987)...................................................................... 28

*Gunderson v. U.S. Dep't of Labor*,
  601 F.3d 1013 (10th Cir. 2010) ........................................... 6, 22, 23

*Harman Mining Co. v. Director, OWCP*,
  678 F.3d 305 (4th Cir. 2012) ........................................................ 29

*Hays v. Sullivan*,
  907 F.2d 1453 (4th Cir. 1990) ...................................................... 26

*Hess v. Clinchfield Coal Co.*,
  7 BLR 1-295 (1984)...................................................................... 28

*Hill v. Office of Workers' Compensation Programs*,
  562 F.3d 264 (3rd Cir. 2009)........................................................ 31

*Hobbs v. Clinchfield Coal Co.*,
  917 F.2d 790, 791 (4th Cir. 1990) .................................................. 4

*Hoffman v. B & G Construction Co.*,
    8 BLR 1-65 (1985)........................................................................28

*Island Creek Coal Co. v. Compton*,
    211 F.3d 203 (4th Cir. 2000) ....................................6, 7, 21, 24, 26

*Milburn Colliery Co. v. Hicks*,
    138 F.3d 524 (4th Cir. 1998) ...........................................7, 20, 30

*Office of Workers' Compensation v. Greenwich Collieries*,
    512 U.S. 267 (1994)...................................................................27

*Peabody Coal Co. v. Lowis*,
    708 F.2d 266 (7th Cir. 1983) .......................................................31

*Shinseki v. Sanders*,
    556 U.S. 396 (2009)...................................................................22

*Stalcup v. Peabody Coal Co.*,
    477 F.3d 482 (7th Cir. 2007) .......................................................35

*Sterling Smokeless Coal Co. v. Akers*,
    131 F.3d 438 (4th Cir. 1997) .........................................................7

*Webber v. Peabody Coal Co.*,
    23 BLR 1-123 (2006)(en banc)(Boggs J. concurring), *aff'd on recon.*,
    24 BLR 1-1(2007)(en banc) ..................................................21, 22

**Statutes**

Administrative Procedure Act
    5 U.S.C. §557(c)(3)(A)……………………………………….28, 30

Black Lung Benefits Act
    30 U.S.C. §902(b)……………………………………………….4
    30 U.S.C. 921(c)(4)………………………………………… 3
    30 U.S.C. §923(b)……………………………………….. 23
    30 U.S.C. §932(a)……………………………………………….1

Longshore and Harbor Workers' Compensation Act

    33 U.S.C. §921(c)……………………………………………………………1

## Regulations

Black Lung Regulations

    20 C.F.R. §718.107………………………………………………4, 6, 21

    20 C.F.R. §718.201(a)........................................................................33

    20 C.F.R. §718.202(a)……………………………………………4, 7, 23, 24

    20 C.F.R. §718.202(a)(1)…………………………………………………24

    20 C.F.R. §718.202(a)(2)…………………………………….......24

    20 C.F.R. §718.202(a)(3)……………………………………….....24

    20 C.F.R. §718.202(a)(4)…………………………………………4, 7, 24, 31

    20 C.F.R. §718.305………………………………………………………3

    20 C.F.R. §725.482(a)………………………………………………...1

    65 Fed. Reg. 79,940(Dec. 20, 2000)………………………29, 30, 32

    65 Fed. Reg. 79,943(Dec. 20, 2000)………………………………32

# I.   STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This appeal arises from a Decision and Order issued by the Benefits Review Board ("Benefits Review Board" or the "Board"), United States Department of Labor, under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, most commonly known as the Black Lung Benefits Act, 30 U.S.C. §§901-45.  This Court has authority to review decisions issued by the Benefits Review Board pursuant to 33 U.S.C. §921(c), as incorporated by Section 422(a) of the Black Lung Benefits Act, 30 U.S.C. §932(a).

The Benefits Review Board issued a Decision and Order on October 6, 2014 affirming the Decision and Order Granting Benefits on Living Miner's Claim issued by the administrative law judge. *Joint Appendix* ("*JA*") 25.  Sea "B" Mining Company ("Sea B") timely filed a Petition for Review with the Fourth Circuit Court of Appeals on December 3, 2014**.** *JA* 82. *See* 33 U.S.C. §921(c); 20 C.F.R. §725.482(a).  Mr. Jerry K. Addison ("Addison") last worked as a coal miner in the Commonwealth of Virginia. *JA* 27, *see also JA* 2, 50.   The facts establish this Court's appellate and subject matter jurisdiction.

1

## II.    <u>ISSUES PRESENTED</u>

1. Whether the ALJ erred as a matter of law by improperly excluding probative CT scan evidence and failing to consider all evidence.

2. Has the ALJ erred by engaging in a selective analysis of the evidence while misapplying provisions of the preamble and resolving medical disputes by a headcount of the evidence?

### III. STATEMENT OF THE CASE

Addison retired from coal mining in 1981, and filed this subsequent claim for benefits on March 15, 2011. *JA* 85. After receiving a preliminary award, his case was heard by the Honorable Judge Stephen R. Henley on December 4, 2012 in Abingdon, Virginia. *JA* 37. Judge Henley issued a Decision and Order Granting Benefits on September 6, 2013 finding Addison met his burden of proof in this claim. *JA* 1.

Administrative Law Judge ("ALJ") Henley credited Addison with 11.17 years of coal mine employment, and found him not entitled to the 15-year presumption at 30 U.S.C. §921(c)(4), as incorporated by 20 C.F.R. § 718.305. *JA* 2, 5. The weight of pulmonary function studies and blood gas testing failed to meet the disability standards set forth in the tables in Appendix C of Part 718 of the Code of Federal Regulations. *JA* 6-8. The ALJ found Addison disabled relying on the medical opinion evidence finding he suffers from an oxygen transfer abnormality which prevents him from returning to his previous job as a coal miner. *JA* 9.

The record contains seven conflicting interpretations of three x-rays. *JA* 12. Judge Henley found two of these films fail to support the presence or absence of

clinical coal workers' pneumoconiosis.[1] *Id.* The judge found the x-ray evidence positive for pneumoconiosis because the record contains two positive readings of Addison's Department of Labor x-ray and only one negative reading. *Id.* Judge Henley admitted the three negative CT scan readings offered by Sea B at the formal hearing, but announced in his decision he would admit only one study which he selected. *JA* 14. The CT scan evidence did not support the presence of clinical or legal pneumoconiosis. *Id.*

The judge next evaluated the medical opinion evidence by determining the "documentation" and "reasoning" offered by three physicians. *JA* 15-16. Dr. Fino's opinion, based on an examination of Addison and a review of the remaining evidence of record, received reduced weight because the judge believed he relied on the restrictive nature of Addison's impairment, and "failed to offer any explanation for why" coal dust did not contribute to Addison's condition. *JA* 19-20. Dr. Castle formulated his opinion through a review of all the evidence of record, but the ALJ also believed he improperly relied on the restrictive nature of Addison's impairment, and "failed to explain why [Addison] could not be one of

---

[1] Coal workers' pneumoconiosis is a "chronic dust disease of the lung . . . arising out of coal mine employment." 30 U.S.C. §902(b). . . . con't
Clinical pneumoconiosis is "the lung disease caused by the fibrotic reaction of the lung tissue to inhaled dust. . ." *Hobbs v. Clinchfield Coal Co.*, 917 F.2d 790, 791 n. 1 (4th Cir. 1990). Legal pneumoconiosis is more broadly defined as "all lung disease which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine." *Id.* at 496.

those rare cases of [coal workers' pneumoconiosis] without obstruction." *JA* 19. Judge Henley gave more weight to the results of Dr. Forehand's exam finding his opinion consistent with the Department of Labor's position in the preamble that coal dust and smoking can be additive in producing obstructive impairments. *JA* 20.

The ALJ found Addison established he suffers from clinical pneumoconiosis based on the x-ray evidence, and legal pneumoconiosis based on the medical opinion of Dr. Forehand. *Id.* The judge would also rely on Dr. Forehand's opinion finding Addison's "totally disabling respiratory impairment was due to pneumoconiosis and that the pneumoconiosis was caused by coal dust exposure and cigarette smoke." *JA* 21. The opinions of Drs. Fino and Castle received less weight for failing to diagnose Addison with clinical or legal pneumoconiosis. *Id.*

Sea B appealed the ALJ's decision to the Benefits Review Board arguing the judge erred in awarding benefits because he improperly shifted the burden of proof, excluded relevant evidence, and relied on the numerical superiority of the x-ray evidence. *JA* 25-35. A majority of the panel affirmed the award by Decision and Order issued October 6, 2014. *JA* 25. The majority found the ALJ "properly considered the weight of the positive x-ray readings in light of the readers' qualifications" and did not rely on the numerical superiority of the interpretations to find Addison suffers from clinical pneumoconiosis. *JA* 28. The court agreed the

ALJ "erred in considering only one of the three CT scans employer submitted in its affirmative case," but found the error harmless. *JA* 30. Despite the fact the judge failed to consider all relevant evidence, the majority reasoned "because employer has not provided a specific explanation of how the administrative law judge's error could have made a difference, we decline to remand the case for further consideration of the CT scan evidence." *Id.* The court rejected Sea B's challenge to the ALJ's weighing of the medical opinion evidence finding the judge adequately explained the basis for rejecting the opinions of Drs. Fino and Castle. *JA* 31-33.

Administrative Appeals Judge Boggs authored a dissenting opinion because the judge's exclusion of Sea B's CT scan evidence is reversible error, and the case should be remanded for full evaluation of the evidence. *JA* 33-35. Judge Boggs explained:

> By the majority's reasoning, improper exclusion of evidence would always be harmless error because it is not possible to determine with certainty its effect on the trier-of-fact's ultimate determination, and thereby demonstrate prejudice. The administrative law judge's failure to consider the additional CT scan evidence could affect his consideration of the medical opinion evidence pursuant to Section 718.202(a)(4), as well as his weighing of all medical evidence, like and unlike, pursuant to *Compton*. Contrary to the majority's holding, this case is not analogous to *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1027, 24 BLR 2-297, 2-318-19 (10th Cir. 2010), because the evidence in question was not permissibly excluded, and employer's argument that it may affect the administrative law judge's weighing of the totality of the evidence has merit in light of *Compton*. Therefore, I would vacate the administrative law judge's weighing of

6

the CT scan evidence and remand the case for the administrative law judge to reconsider this evidence pursuant to Section 718.107(d)[sic]. Further, because of the administrative law judge's error in the evaluation of the CT scan evidence, his overall finding of the existence of pneumoconiosis at Section 718.202(a) is tainted, as he has not accurately set forth the evidence underlying the medical opinions. Therefore I would vacate the administrative law judge's weighing of the medical opinion evidence at Section 718.202(a)(4) and remand the case for him to reweigh the medical opinions. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 21 BLR 2-323 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 21 BLR 2-269 (4th Cir. 1997). Moreover, I would instruct the administrative law judge to then weigh together all of the evidence, like and unlike, in this case, to determine whether the existence of pneumoconiosis is established pursuant to Section 718.202(a). *Compton*, 211 F.3d at 211, 22 BLR at 2-174.

*JA* 34-35.

Sea B's appeal of the Board's decision to this Court timely followed.

7

## IV.   STATEMENT OF FACTS

This is Addison's second claim for benefits stemming from his 11.17 year mining career which ended on March 30, 1981. *JA* 2. Addison's smoking history far exceeds the length of his mining career, but the record is less than clear to the exact duration of this habit. *JA* 4.  The record shows Addison began his one package per day smoking habit at age 15 in 1956, and he reported to physicians quitting sometime between 2001 and 2003. *Id.*  But, a record from Mountain View Veteran's Administration Medical shows Addison continued to smoke at a rate of a pack per day in 2012. *Id. See also JA* 320.  Addison has a history of coronary artery disease, hypertension, hyperlipidemia, gastroesophageal reflux disease, and diabetes. *See generally JA* 308-322.  As a result of his heart condition, he underwent left heart catheterization and coronary artery bypass grafting times two in June, 2008. *JA* 308-319.

### Chest X-ray Evidence

May 20, 2011 Chest X-ray

Addison underwent an x-ray study in connection with his Department of Labor examination with Dr. Forehand. *JA* 89.  Dr. Forehand is Board-certified in Pediatrics and Allergy & Immunology, and is a B-reader. *JA* 105-113.   The physician read the x-ray as positive for simple pneumoconiosis. *JA* 89.  The record contains two additional readings of this film submitted as the rebuttal evidence of

8

Addison and Sea B.  Dr. Scott, a Board-certified radiologist and B-reader, read this film as negative for coal workers' pneumoconiosis. *JA* 126-45.  The physician observed changes of interstitial fibrosis, possibly usual interstitial pneumonia, and recommended further evaluation by CT scan. *JA* 126.  Dr. Miller, who is a Board-certified radiologist and B-reader, interpreted this film as positive for simple pneumoconiosis. *JA* 120-25.

January 12, 2009 Chest X-ray

Dr. Miller read Addison's January 12, 2009 x-ray as positive for simple coal workers' pneumoconiosis. *JA* 229-30.  The physician found "diffuse small opacities," which are "predominantly irregular." *JA* 230.  Dr. Scott re-read this film as negative for pneumoconiosis. *JA* 228.  He observed "peripheral scarring" of an "uncertain etiology." *Id.*  Dr. Scott recommended a CT scan for better evaluation. *Id.*

February 23, 2011 Chest X-ray

Dr. Alexander read Addison's February 23, 2011 x-ray as positive for simple coal workers' pneumoconiosis. *JA* 231.  Dr. Alexander is Board-certified in radiology and is a B-reader. *JA* 222-27.  Dr. Scott re-read this film as negative. *JA* 232. He again found peripheral scarring, which is "NOT a pattern for silicosis/[coal workers' pneumoconiosis.]" *Id.*  Dr. Scott again recommended a CT scan "to further evaluate" Addison's lung abnormalities. *Id.*

9

**Medical Opinion Evidence**

Medical Report of Dr. Forehand

Dr. Forehand authored a medical opinion dated May 20, 2011 based on his examination of Addison. *JA* 89-104. Dr. Forehand's physical exam showed audible crackles, and he felt Addison's pulmonary function study indicated a non-disabling obstructive impairment. *JA* 95-100, 103-4. Addison's exercise blood gas study results showed a disabling impairment in oxygenation. *JA* 90-92, 103-4. Based on this exam, Dr. Forehand would diagnose Addison with coal workers' pneumoconiosis, cigarette smoker's lung disease, and coronary artery disease. *JA* 104.

Dr. Forehand concluded cigarette smoking caused Addison's mild obstructive impairment, and coal dust caused his impairment in gas exchange. *Id.* Dr. Forehand diagnosed Addison with clinical and legal pneumoconiosis based on his positive chest x-ray interpretation, blood gas study, and a history of coal dust exposure. The physician felt Addison's heart disease is causing "little" impairment.

Medical Report and Deposition Testimony of Dr. Fino

Dr. Fino authored his November 15, 2011 medical opinion based on an examination of Addison, and a review of Dr. Forehand's report and Addison's treating records. *JA* 146-74. Dr. Fino is Board-certified in Internal Medicine and

Pulmonary Disease, and is a certified B-reader. *JA* 175-88. Addison reported a history of diabetes, high blood pressure, chronic obstructive pulmonary disease (COPD), bypass surgery(2008), acid reflux, and uses CPAP therapy. *JA* 146-48.

Addison's x-ray was abnormal, but the irregular markings are not consistent with coal workers' pneumoconiosis. *JA* 149, 173-74. Dr. Fino reviewed a CT scan conducted three years prior to this exam which showed no evidence of coal workers' pneumoconiosis. *JA* 149-50. The comparison of the two studies showed the "very significant change in this man's chest imaging between 2008 and 2011." *JA* 150.

Addison's pulmonary function study was invalid, but "[h]ad better effort been given . . . then the spirometry would have been normal." *JA* 151. Dr. Fino's review of older pulmonary function studies allowed him to conclude that Addison's function "is not significantly different from 2007." *JA* 153. Addison's diffusing capacity and blood gas study did indicate a "significant impairment in oxygen transfer." *Id.* This degree of impairment does render Addison totally disabled. *JA* 160.

Reviewing the results of a chest x-ray Addison underwent in 2004, along with his CT scan and chest x-ray interpretations, Dr. Fino found "a marked progression and worsening of Mr. Addison's lung disease between 2008 and 2011." *JA* 153. These rapid changes of diffuse fibrosis are caused by idiopathic

pulmonary fibrosis, which is a disease unrelated to coal dust exposure and has caused Addison's disabling impairment. *JA* 154, 160. To explain the basis for his conclusion, Dr. Fino cited to medical literature showing autopsied coal miners commonly suffer from interstitial fibrosis, but not diffuse interstitial fibrosis. *JA* 154-55. Further studies show there is no pathologic evidence coal dust exposure causes primarily irregular changes on an x-ray. *JA* 155. In fact, the percentage of individuals with no occupational exposure to dust having x-ray appearances of primarily irregular opacities is virtually identical to that of exposed coal miners. *Id.* After reviewing the specific aspects of Addison's case, along with the relevant medical literature, Dr. Fino found "no evidence of an association between his work in the mines and the pulmonary fibrosis seen radiographically." *JA* 157.

Dr. Fino subsequently conducted an interpretation of Addison's CT scan taken on June 27, 2012. *JA* 189. This study showed "no changes consistent with a coal mine dust associated occupational lung disease." *Id.*

Dr. Fino reviewed more recent records from the Veteran's Administration and offered deposition testimony on November 27, 2012.[2] *JA* 190-220. The evidence shows Addison has experienced "a marked worsening" of his lung abnormalities over the four-year period of lung imagery studies the physician reviewed. *JA* 205. The physician acknowledged coal workers' pneumoconiosis

---

[2] These recent records indicated Addison continued to smoke through July, 2012. *JA* 196.

can be a progressive disease, but the progression demonstrated on the CT scans and x-ray "occurred far too rapidly to be consistent with coal-mine-dust inhalation." *Id.*

The physicians reading Addison's x-ray as positive for pneumoconiosis did not have the benefit of reviewing larger a set of data which includes multiple lung imagery studies over a period of time. *JA* 207. Dr. Fino felt he is in a better position to determine the cause of Addison's lung abnormalities because he had the opportunity to review a wide array of data, and not just a single study. *Id.*

Addison's lung volume study shows he has "some restrictive disease," which is the pattern of impairment associated with idiopathic pulmonary fibrosis. *JA* 207-08. Addison's records also show impairment on resting and exercise blood gas which is also consistent with a diagnosis of idiopathic pulmonary fibrosis. *JA* 210.

The physician testified there is no evidence in the medical literature linking coal dust to the development of diffuse idiopathic pulmonary fibrosis. *JA* 212. Coal dust causes a nodular fibrosis, but Addison suffers from a diffuse type which is "completely different pathologically and radiographically." *JA* 213. Furthermore, the bullous emphysema he observed is not associated with coal dust which causes centrilobular emphysema. *Id.* There is growing evidence in the medical literature linking smoking to the development of idiopathic pulmonary

13

fibrosis, but there is no causal link to the development of the disease as a result of coal dust exposure. *JA* 215-16.

### Medical Opinion and Deposition Testimony of Dr. Castle

Dr. Castle authored a November 7, 2012 opinion based his review of Addison's treatment records, x-ray interpretations, the medical opinions and testing of Drs. Fino and Forehand, and his interpretation of a CT scan dated March 8, 2012. *JA* 251-69. Dr. Castle is Board-certified in Internal Medicine and Pulmonary Diseases, and is a certified B-reader. *JA* 270-74. Addison's March 8, 2012 CT was "markedly abnormal," but shows no changes consistent with coal workers' pneumoconiosis. *JA* 266. Instead, the study shows "significant pleural based apical fibrosis associated with pleural scarring and extensive bullous emphysematous changes in the upper lung zones," and "significant bibasilar fibrosis associated with honeycombing and bullae formation bilaterally." *Id.*

The x-ray evidence is "decidedly and significantly abnormal," but shows primarily irregularly shaped opacities "which are not typical of coal workers' pneumoconiosis." *JA* 267-68. Dr. Castle's CT reading "confirmed the presence of diffuse interstitial pulmonary fibrosis typical of usual interstitial pneumonitis or idiopathic pulmonary fibrosis." *JA* 267. "This is a disease of the general public at large and is unrelated to coal mine dust exposure and coal workers' pneumoconiosis." *JA* 268.

Addison's treatment records contain diagnoses of chronic obstructive pulmonary disease, but the valid pulmonary function testing "did not show any evidence of airway obstruction at any time." *Id.* There is evidence of a restrictive airways disease "due to his usual interstitial pneumonitis or idiopathic pulmonary fibrosis and contributed to by his obesity." *Id.* Addison's diffusing capacity is also reduced which is not characteristic of pneumoconiosis, but is found in usual interstitial pneumonitis or idiopathic pulmonary fibrosis. *Id.*

Dr. Castle found Addison's x-ray changes and impairment are caused by usual interstitial pneumonitis or idiopathic pulmonary fibrosis and not the inhalation of coal dust. *JA* 269.

> This is a condition associated with increasing age, slowly progressive dyspnea, and nonproductive cough. Men are more commonly affected than women. Pulmonary function studies typically demonstrate a restrictive pattern and chest x-rays show diffuse interstitial opacities associated with reduced lung volumes. CT scans of the chest demonstrate a characteristic pattern of peripheral (subpleural) and bibasilar opacities associated with architectural distortion, including honeycomb changes and traction bronchiectasis. Typically, this disease follows a progressive course. Cigarette smoking influences survival. This disease occurs more frequently in heavy cigarette smokers.

*Id.*

Dr. Castle further explained his opinions by deposition taken November 15, 2012. *JA* 275-98. He agreed Addison's chest x-ray is abnormal, showing interstitial pulmonary fibrosis primarily in the lower and mid lung zones with

15

"some very peripheral fibrotic changes in the upper zones as well. These were associated with some significant bullous changes, honeycombing and pleural thickening." *JA* 280. This presentation is "consistent with diffuse interstitial pulmonary fibrosis typical of usual interstitial pneumonitis or idiopathic pulmonary fibrosis." *Id.* Dr. Castle explained that a CT scan "is a very sensitive test that is used in diagnosis and evaluation of all type lung disease" and widely accepted in the medical community. *JA* 282. The CT scan confirmed the presence "of significant pleural-based apical fibrosis with pleural scarring and bullous emphysematous changes . . . significant bibasilar fibrosis associated with honeycombing and bullae formation bilaterally . . . [and] evidence of bilateral minimal bronchiectasis in the lower lung zones." *JA* 283.

Although idiopathic pulmonary fibrosis is a disease of unknown cause, it does mean a physician is merely guessing when rendering this diagnosis. *JA* 284. Addison's radiographic, clinical, and physiological presentation meets the criteria for this diagnosis, and this presentation excludes a diagnosis of pneumoconiosis. *Id.* Usual interstitial pneumonitis is a disease often "associated with heavy cigarette smoking," and the record shows Addison had a "quite extensive" smoking history which may have continued into 2012. *JA* 284-85.

Addison's impairment is manifested by "restriction, reduction in diffusion without any obstruction [which] is typical of usual interstitial pneumonitis or

idiopathic pulmonary fibrosis and is not typical for [coal workers' pneumoconiosis.]" *JA* 287. His CT scan shows bullae "due to traction related to the scarring from the fibrosis."[3] *JA* 287. Coal workers' pneumoconiosis can cause focal emphysema, but no support exists in the literature showing coal dust causes bullous emphysema. *JA* 287-89.

Dr. Castle reviewed Dr. Forehand's report and disagreed with his diagnosis of disabling pneumoconiosis. *JA* 290-91. Dr. Forehand's opinion is comprised solely of Addison's work history, and the physician's x-ray reading. *JA* 290. It did not appear that Dr. Forehand had been made aware of the other medical records in this case. *JA* 291. Dr. Castle disputed Dr. Forehand's diagnosis because with the degree of blood gas impairment found in this case a physician would expect to see some evidence of airway obstruction. *JA* 291-92. Dr. Castle also cited to the limitations of Dr. Forehand's testing which failed to include lung volume testing and a diffusion study. *JA* 292. The evidence shows Addison suffers from usual interstitial pneumonitis or idiopathic fibrosis which is unrelated to his coal dust exposure. *JA* 296. Addison's exposure to coal dust did not contribute to his condition and associated impairment. *JA* 296-97.

---

[3] This bullous formation occurs as scar tissue is shrinking. *JA* 287.

## V.    SUMMARY OF ARGUMENT

This case presents issues addressing an ALJ's failure to properly consider all relevant evidence as mandated by the Black Lung Benefits Act, and the ALJ's failure to accurately evaluate the evidence in a manner which accords with the law. The ALJ erred by improperly excluding two CT scan readings offered by Sea B, and thus failed to fulfill his obligation to weigh and consider all evidence. The majority panel of the Benefits Review Board recognized the CT scan evidence is admissible, but failed to remand the case believing Sea B failed to show actual prejudice. When an ALJ fails to consider all relevant evidence, appellate review is impossible and remand is required.

The excluded CT scan evidence shows the miner in this case developed a diffuse form of interstitial pulmonary fibrosis nearly thirty years after his last exposure to coal dust. Dr. Fino explained the miner's condition rapidly progressed from 2008 to 2011 at a rate of progression not seen in coal workers' pneumoconiosis. The CT scan appearance is also typical for the disease of interstitial pulmonary fibrosis which is never caused by coal dust exposure. The ALJ never weighed these critical findings against the evidence of record which is clear error. The award entered below must be vacated.

The judge's consideration of the evidence contains further error as he applied inconsistent levels of scrutiny when weighing the evidence, misapplied the

Department of Labor's findings in the preamble, and resolved the conflicting chest x-ray evidence by headcount. Sea B does not dispute an ALJ may look to the findings in the preamble to resolve medical issues. But in this case the ALJ cited to irrelevant portions of the preamble to credit the opinion of Dr. Forehand and to discredit the opinions of Sea B's experts. The judge would also apply an inconsistent level of scrutiny by summarily accepting the bald conclusions of Dr. Forehand while discrediting the far more comprehensive opinions of Drs. Fino and Castle. The ALJ never truly considered the opinions these physicians offered, but instead focused on isolated statements he felt undermine the physicians' credibility. Finally, the judge resolved the conflicting x-ray evidence by engaging in a prohibited headcount to find Addison met his burden of proving the existence of pneumoconiosis. These errors require the award to be reversed, or vacated and remanded.

## VI.   **ARGUMENT**

## A.  STANDARD OF REVIEW

This Court reviews the findings of fact made by the ALJ to determine whether they are supported by substantial evidence. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).  A determination of whether substantial evidence supports the ALJ's findings requires this Court to first "address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998).  When the ALJ fails to meet this standard, remand is required. *Id.*  Finally, this Court reviews the conclusions of the ALJ and the Benefits Review Board "de novo to determine whether they are rational and consistent with applicable law."

## B. THE   ALJ   IMPROPERLY   EXCLUDED   PROBATIVE EVIDENCE AND FAILED TO SATISFY HIS DUTY TO CONSIDER ALL RELEVANT EVIDENCE.

The ALJ's award of benefits is not in accordance with controlling authority, and is not supported by substantial evidence.  Judge Henley's decision improperly excludes probative CT scan evidence that Sea B's experts relied upon to demonstrate Addison does not suffer from coal workers' pneumoconiosis.  The Benefits Review Board agreed that the judge erred by not considering all of Sea B's evidence, but a majority concluded this error is harmless.  The ALJ's failure to

20

consider all the relevant evidence in this case is not harmless error because the judge has failed to satisfy his duty to consider all relevant evidence under the Black Lung Benefits Act, and the standard set forth by this Court in *Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000). Appellate review is impossible when an ALJ fails to consider all relevant evidence and remand is required.

At the formal hearing Sea B offered, and the ALJ admitted, interpretations of three CT scans conducted on three separate occasions which are negative for coal workers' pneumoconiosis. *JA* 43-44. Dr. Fino provided interpretations of CT scans dated August 20, 2008 and June 27, 2012, and Dr. Castle conducted a reading of Addison's March 8, 2012 CT scan. *JA* 153, 189, 266. The ALJ incorrectly announced in his Decision and Order that "[t]he parties are entitled to introduce only one reading of 'other evidence' such as CT scans."[4] *JA* 14, *referencing Webber v. Peabody Coal Co. and Director, OWCP*, 23 BLR 1-123 (2006)(en banc)(Boggs, J. concurring), *aff'd on recon.*, 24 BLR 1-1(2007)(en banc). *Sua sponte*, the judge arbitrarily picked Dr. Fino's reading of Addison's June 27, 2012 CT scan as the only admissible CT scan evidence in this claim. *Id.*

---

[4] CT scans are admissible as "Other medical evidence" as provided by 20 C.F.R. § 718.107. This regulation permits the admission "of any medically acceptable test or procedure reported by a physician and not addressed in this subpart, which tends to demonstrate the presence or absence of pneumoconiosis, the sequelae of pneumoconiosis or a respiratory or pulmonary impairment."

21

A majority panel of the Benefits Review Board agreed that the ALJ erred by failing to adhere to its decision in *Webber*, which allows each party to submit "one reading of each separate test of procedure undergone by claimant." *JA* 30.  Sea B argued the ALJ's failure to admit and consider this CT scan evidence could have impacted his weighing of the medical opinions of Drs. Castle and Fino because both physicians relied on this evidence when offering their opinions.  The majority found this argument "insufficient to justify vacating the administrative law judge's decision because employer bears the 'burden of showing that the [ALJ's] error was harmful . . ." *JA* 30, *quoting Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).  The court reasoned:

> This case is analogous to *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1027, 24 BLR 2-297, 2-319 (10th Cir. 2010), in which the United States Court of Appeals for the Tenth Circuit held that an administrative law judge's erroneous exclusion of a treatment report referencing a positive x-ray interpretation was harmless because claimant was unable to show how it prejudiced his case in light of all the medical evidence of record.

*Id.*

Judge Boggs' dissent properly recognizes that Judge Henley erred by failing to consider all relevant evidence, and "[b]y the majority's reasoning, improper exclusion of evidence would always be harmless error because it is not possible to determine with certainty its effect on the trier-of-fact's ultimate determination." *JA* 34.  Judge Boggs correctly found the majority's citation to the Tenth Circuit's

22

decision in *Gunderson* is misplaced. *JA* 34. The ALJ in *Gunderson* excluded a physician's letter which reported the miner suffered from pneumoconiosis. 601 F.3d at 1027. The ALJ excluded the letter because it did not meet the regulatory standards for x-rays "because (a) it did not show the date the x-ray was taken and (b) it did not give the name or qualifications of the doctor who read the x-ray or the type of opacities found." *Id.* Contrary to the view expressed by the majority, the Tenth Circuit did not uphold the ALJ's decision to exclude the letter "because claimant was unable to show how [the excluded evidence] prejudiced his case." *JA* 30. Instead, the Court found the ALJ had not abused his discretion by excluding the evidence because the "letter only referred to an x-ray but did not contain crucial information about it (*e.g.* who interpreted it and what it actually showed). . ." *Gunderson*, 601 F.3d at 1027. Unlike the facts of *Gunderson*, the CT scans excluded by Judge Henley are admissible and highly probative to the issues of this claim.

To determine whether a miner has met his burden of establishing the presence of pneumoconiosis the Black Lung Benefits Act mandates "all relevant evidence shall be considered." 30 U.S.C. §923(b). 20 C.F.R. § 718.202(a) provides four methods by which a miner may establish he suffers from pneumoconiosis: 1) chest x-ray, 2) biopsy or autopsy, 3) regulatory presumption, or 4) through a medical opinion made by a physician "exercising sound medical

23

judgment." 20 C.F.R. § 718.202(a)(1-4). The ALJ is to first evaluate the evidence under each subsection of 20 C.F.R. § 718.202(a), and then weigh all of the evidence together to determine if the evidence establishes the presence of pneumoconiosis. *Compton*, 211 F.3d 203, 208-09. Deference is afforded to an ALJ's weighing of the evidence, but when an ALJ "has improperly characterized the evidence or failed to [take] account of relevant record material, deference is inappropriate and remand is required." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003), *referencing Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983).

The ALJ's analysis of the medical opinion evidence confirms he did not consider Dr. Fino's interpretation of the August 20, 2008 CT scan, or Dr. Castle's reading of Addison's March 8, 2012 CT scan. *JA* 19-20. The majority of the Benefits Review Board found this harmless error, but overlooked how this evidence factored into the conclusions reached by those physicians. *JA* 34. Both physicians found this evidence provided critical insight into the nature of the Addison's lung abnormalities which are not related to coal dust exposure. The medical opinions of Drs. Fino and Castle, which incorporate the CT scan findings, undermine the opinions offered by physicians who read Addison's x-ray as positive for pneumoconiosis.

24

Dr. Fino's interpretation of Addison's 2008 CT scan "showed some emphysema and pulmonary fibrosis at the [lung] bases," but the October 20, 2011 x-ray "shows a marked change." *JA* 153. These two studies show a clear "progression of this man's condition over three years." *JA* 203. Dr. Fino did not deny coal workers' pneumoconiosis can be a latent and progressive disease, but these changes are "far too significant . . . that occurred far too rapidly to be consistent with coal-mine-dust inhalation." *JA* 205. A physician conducting "a one-time review of a chest x-ray" would not identify "the rapid progression and have the whole picture." *JA* 207. Dr. Fino firmly stated a physician offering an opinion based on a single pulmonary evaluation would not be able to arrive at proper diagnosis for Addison's condition. *JA* 211.

Dr. Castle explained CT scans are "a very sensitive test that is used in diagnosis and evaluation of all type lung disease." He found Addison's March 8, 2012 CT scan "confirmed the presence of diffuse interstitial pulmonary fibrosis typical of usual interstitial pneumonitis or idiopathic pulmonary fibrosis." *JA* 267. Usual interstitial pneumonitis "follows a progressive course," which is consistent with the "very significant change in this man's chest imaging between 2008 and 2011." *JA* 264, 269. Dr. Castle reviewed Dr. Fino's CT scan interpretations, and conclude the "CT scans of the chest demonstrate a characteristic pattern of peripheral (subpleural) and bibasilar opacities associated with architectural

distortion, including honeycomb changes and traction bronchiectasis." *JA* 269. Addison's condition is the result of a "disease of the general public at large and is unrelated to coal mine dust exposure and coal workers' pneumoconiosis." *JA* 269.

The standard set forth by this Court in *Compton* requires the ALJ to weigh all evidence. 211 F.3d at 203. The ALJ fell far short of this standard by improperly excluding CT scan evidence which Drs. Fino and Castle relied upon to formulate their opinions. The rapid changes found on the CT scans undermine the positive x-ray readings, but the ALJ erred by never weighing the x-ray evidence against the medical opinion evidence. *JA* 20. ("Based on a preponderance of the x-ray evidence, I find that Claimant has demonstrated that he suffers from clinical pneumoconiosis.") "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's failure to consider all the evidence in this claim requires this Court to vacate the award of benefits and remand this claim.

## C. THE ALJ ERRED BY SELECTIVELY ANALYZING THE EVIDENCE, RELYING ON IRRELEVANT STATEMENTS IN THE PREAMBLE, AND RESOLVING MEDICAL DISPUTES BY HEADCOUNT.

Addison does not benefit from a regulatory presumption in this claim, and bears the burden of proving each element of entitlement by a preponderance of the evidence. *Office of Workers' Compensation v. Greenwich Collieries*, 512 U.S. 267 (1994). The ALJ's analysis of the medical evidence in this claim fails to adhere to controlling authority, and is not supported by substantial evidence. The judge mischaracterized the opinions of Drs. Fino and Castle, and subjected these opinions to a heightened level of scrutiny. The ALJ accepted Dr. Forehand's opinion on its face, and credited the physician's findings by citing to irrelevant statements contained in the preamble to the amended regulations. Finally, the ALJ improperly resolved the conflicting x-ray evidence by headcount to find the presence of pneumoconiosis.

1. The ALJ selectively analyzed the medical opinion evidence and relied on irrelevant portions of the preamble to find Addison suffers from legal pneumoconiosis.

The evidence of record contains three medical opinions addressing the presence of pneumoconiosis. *JA* 15-20. Drs. Fino and Castle found Addison does not suffer from the disease, and Dr. Forehand found the presence of pneumoconiosis. *Id.* Judge Henley recognized the conflicting medical opinions

27

and sought to resolve this conflict by determining the probative value "in terms of documentation, reasoning and treating physician status." *JA* 15.

> Regarding the first probative value consideration, documentation, a physician's medical opinion is likely to be more comprehensive and probative if it is based on extensive objective medical documentation such as radiographic tests, physical examination, symptoms and the patient's history. *Hoffman v. B & G Construction Co.*, 8 B.L.R. 1-65 (1985); *Hess v. Clinchfield Coal Co.*, 7 B.L.R. 1-295 (1984). A 'documented' opinion sets forth the clinical findings, observations, facts and other data on which the physician based the diagnosis. *Fields v. Island Creek Coal Co.*, 10 B.L.R. 1-19 (1987). In other words, a doctor who considers an array of medical documentation that is both wide (involving comprehensive testing) and deep (includes both the most recent medical information and past medical tests) is in a better position to present a more probative assessment that the physician who bases a diagnosis on a test or two and one encounter.
> The second factor affecting relative probative value, reasoning, involves an evaluation of the connections a physician makes based on the documentation before him or her. A doctor's reasoning that is both supported by the objective medical tests and consistent with all the documentation in the record is entitled to greater probative weight.

*JA* 15-16. Despite announcing this standard, the ALJ's actual evaluation of the medical opinion evidence ignores these principals. Instead, the ALJ selectively analyzed the opinions of Drs. Fino and Caste while summarily crediting Dr. Forehand's conclusions as consistent with irrelevant portions of the preamble.

The Administrative Procedure Act ("APA") requires that agency decisions contain a statement of "findings and conclusions, and the reasons for bases therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). The ALJ summarily accepted Dr. Forehand's diagnosis

of legal pneumoconiosis as "consistent with the position of the Department as outlined in the Preamble," and "supported by his diagnostic testing." *JA* 20. Substantial evidence does not support the ALJ's conclusions because the portions of the preamble cited by the ALJ do not apply to this case, and the physician never explains his diagnosis through the testing he performed.

Judge Henley accepted Dr. Forehand's diagnosis of legal pneumoconiosis as consistent with the following passages from the preamble to the amended regulations:

> 'Allowing decrements due to age and smoking, Attfield and Hodous demonstrated a clear relationship between dust exposure and a decline in pulmonary function of about 5 to 9 millimeters a year, even in miners with no radiographic evidence of clinical coal workers' pneumoconiosis.'
> 65 Fed. Reg. 79,940 (Dec. 20, 2000). Further the department has stated:
> 'Coal dust exposure is additive with smoking in causing clinically significant airways obstruction and chronic bronchitis.'
> 65 Fed. Reg. 79,940 (Dec. 20, 2000).

*JA* 20. Sea B does not dispute an ALJ may look to the preamble when resolving conflicting medical opinion evidence. *Harman Mining Co. v. Director, OWCP*, 678 F.3d 305 (4th Cir. 2012). But in this case, the ALJ's reliance on the preamble is misplaced because Dr. Forehand did not render a diagnosis of legal pneumoconiosis in the form of an obstructive impairment caused by smoking and coal dust. *See JA* 104.

Dr. Forehand diagnosed Addison with a non-disabling obstructive impairment caused solely by cigarette smoking.[5] *Id.* ("Cigarette smoking has caused a nondisabling[sic] ventilatory impairment with an FEV1 of 75-78% of predicted.")  Judge Henley's citation to the Department of Labor's findings in the preamble concerning obstructive impairments has no bearing on the diagnosis Dr. Forehand provided. *JA* 20. *See also* 65 Fed. Reg. 79,940.  In fact, Dr. Forehand's opinion conflicts with the very portions of the preamble the ALJ cited. *Id.* Substantial evidence does not support the ALJ's use of the preamble in this case.

The ALJ's acceptance of Dr. Forehand's opinion also violates the APA because he failed to explain how Dr. Forehand's "diagnostic testing" supports his diagnosis of legal pneumoconiosis. *JA* 20, 5 U.S.C. § 557(c)(3)(A).   Dr. Forehand's opinion provides no rationale linking his conclusion that Addison's blood gas impairment is attributable to his coal dust exposure which ended in 1981. *JA* 104.  The fact Addison worked as a coal miner and suffers from an impairment does not equate to a reasoned diagnosis. *Milburn Colliery*, 138 F.3d at 533.  Furthermore, the mere fact that Dr. Forehand read Addison's x-ray as

---

[5] Judge Henley did not question Dr. Forehand's diagnosis of obstruction in light of the opinions of Drs. Fino and Castle who both found a restrictive impairment with no evidence of obstruction. *JA* 153, 268.  The ALJ also failed to consider the physicians' qualifications which "are important indicators of the reliability of their opinions." *Milburn Colliery*, 138 F.3d at 536.  Drs. Fino and Castle are Board-certified in Internal Medicine and Pulmonary Diseases. *JA* 175-88, 270-74.  Dr. Forehand is Board-certified in Pediatrics and Allergy & Immunology. *JA* 105-13.

positive for pneumoconiosis "should not count as reasoned medical judgment under § 718.202(a)(4)." *Cornett v. Benham Coal*, 227 F.3d 569, 576 (6th Cir. 2000). Substantial evidence does not support the ALJ's reliance on Dr. Forehand's opinion as establishing the presence of legal pneumoconiosis.

The level of scrutiny applied to Dr. Forehand's opinion cannot be reconciled with the prohibited selective analysis used to weigh the opinions of Drs. Fino and Castle. *Peabody Coal Co. v. Lowis*, 708 F.2d 266 (7th Cir. 1983). Expert testimony "must be examined in light of all of the testimony offered, rather than simply by way of selective quotes." *Hill v. Office of Workers' Compensation Programs*, 562 F.3d 264, 271 (3rd Cir. 2009). Judge Henley rejected the opinions of Drs. Fino and Castle by highlighting select portions of the physicians' opinions without ever considering their opinions as a whole. *JA* 19-20.

Dr. Fino conducted an examination of Addison, read two CT scans, reviewed much of the evidence of record, and testified by deposition. *JA* 146-220. The physician found the appearance of Addison's lung abnormalities rapidly changed from 2008 to 2011 which would be inconsistent with any progression caused by coal dust exposure. *JA* 203-207. Dr. Fino found this change due to idiopathic pulmonary fibrosis, which is synonymous with the term usual interstitial pneumonia. *JA* 153, 206. Addison's lung volume study confirmed the presence of restriction, and the blood gas testing showed hypoxemia. *JA* 207-210. Dr. Fino

explained these impairments are caused idiopathic pulmonary fibrosis, and support his opinion in this claim. *Id.* The physician's medical opinion also contains an in depth discussion of the relevant medical literature which provides no evidence that coal dust exposure caused diffuse idiopathic pulmonary fibrosis. *JA* 154-57, 212. Dr. Castle also provided a comprehensive review of the evidence in this claim. He found Addison's radiographic presentation and physiologic changes are entirely consistent with a diagnosis of interstitial pulmonary fibrosis. *JA* 268-69. Addison's clinical presentation would be no different had he never worked as a coal miner. *JA* 295-96.

Judge Henley discredited Dr. Fino's opinion finding he "failed to offer any explanation for why only Claimant's smoking has caused fibrosis, without any additive effect from his coal dust exposure." *JA* 19-20. The ALJ supported this decision citing the Department of Labor's position that "coal dust is additive with smoking in causing clinically significant airways obstruction and chronic bronchitis." *JA* 19, *quoting* 65 Fed. Reg. 79,940. The judge cited to 65 Fed. Reg. 79,943 where the Department of Labor's review of the medical literature "support[s] the theory that dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms – namely, the excess release of destructive enzymes from dust – (or smoke--), stimulated inflammatory cells in association with a decrease in protective enzymes in the lung." *Id*. The findings in

32

the preamble about coal dust induced emphysema and obstruction are irrelevant to Dr. Fino's discussion of the diffuse fibrosis in this case. Substantial evidence does not support the ALJ's findings because nothing contained in the preamble undermines Dr. Fino's discussion of the medical literature showing no connection between coal dust and the development of diffuse interstitial pulmonary fibrosis. *JA* 154-57, 212.

The ALJ discredited the opinions of Drs. Fino and Castle believing they "emphasize the fact that Claimant shows restrictive impairment without obstruction." *JA* 19. Legal pneumoconiosis does include chronic restrictive or obstructive impairments, but neither physician concluded that Addison does not suffer from pneumoconiosis based on the pattern of his impairment. *See* 20 C.F.R. § 718.201(a)(2). Neither physician offered an opinion finding coal dust cannot cause a restrictive impairment. Instead, both physicians found, that in this case, Addison's moderate restriction fits their diagnosis of idiopathic pulmonary fibrosis which causes restriction. *JA* 208, 284-87.

Judge Henley provided a detailed discussion of the standard he would employ when weighing the conflicting medical opinion evidence, but failed to adhere to his own criteria. *See JA* 15-16. Instead, the ALJ credited Dr. Forehand's diagnosis on its face, and supported his decision with irrelevant passages from the preamble. The judge improperly discredited the opinions of Drs. Castle and Fino

33

based on selective quotes taken out of context, and more reliance on irrelevant statements from the preamble. Substantial evidence does not support the ALJ's finding of legal pneumoconiosis and remand is required.

2. <u>Judge Henley erred in finding Addison suffers from clinical pneumoconiosis by engaging in a headcount, and failing to fulfill his obligation under the APA for reasoned decision making.</u>

Judge Henley erred in concluding the x-ray evidence establishes the presence of clinical pneumoconiosis because he resolved the disputed issue by resorting to a headcount of the evidence. *JA* 11-12, 20. Having found two of the three x-rays of record in equipoise as to the existence of pneumoconiosis, the ALJ found the May 20, 2011 study positive for pneumoconiosis by crediting two positive readings over one negative reading.[6] *JA* 12. The finding of clinical pneumoconiosis is not based on reasoned decision making and must be vacated.

Judge Henley considered three readings of Addison's May 20, 2011 x-ray. *JA* 12.

> Dr. Forehand and Dr. Miller interpreted it as positive for pneumoconiosis with a profusion category of 2/2 and 2/1, respectively, while Dr. Scott interpreted the same x-ray as negative for pneumoconiosis. Dr. Forehand is a B reader but not board certified in radiology. Drs. Scott and Miller are both dually qualified as B-readers and board-certified radiologists. Dr. Miller's opinion that the x-ray is positive for clinical pneumoconiosis is supported by Dr.

---

[6] The judge completely disregarded Dr. Scott's repeated opinion that the abnormalities on Addison's chest x-ray should be evaluated by CT scan. *JA* 126, 228, 232.

> Forehand's opinion. Consequently, I find the May 20, 2011, chest x-ray is overall positive for clinical pneumoconiosis.

*Id.* The ALJ never explains how Dr. Miller's reading is "supported" by the reading of Dr. Forehand when reaching this conclusion. The ALJ resolved the issue by relying on a headcount of the evidence.

ALJ's are not permitted to resolve medical disputes by a headcount. *Adkins v. Director, OWCP*, 958 F.2d 49, 52 (4th Cir. 1992). "Accordingly, when an ALJ is faced with conflicting evidence from medical experts, he cannot avoid the scientific controversy by basing his decision on which side has more medical opinions in its favor." *Stalcup v. Peabody Coal Co.*, 477 F.3d 482 (7th Cir. 2007). The medical controversy presented by the x-ray evidence in this case was improperly resolved by simply relying on the consensus of readings by Drs. Forehand and Miller. The ALJ's analysis of the x-ray evidence is not in accordance with the law, and the finding of clinical pneumoconiosis must be vacated.

## VII.  <u>CONCLUSION</u>

The award of benefits entered below should be vacated and remanded as it is not based on a full consideration of the evidence.  The ALJ also committed several errors when weighing the evidence he did consider which also requires the award to be vacated and remanded.

Respectfully submitted,

SEA B MINING COMPANY

By Counsel

PENN STUART & ESKRIDGE
208 E. Main Street
P.O. Box 2288
Abingdon, Virginia 24212-2288

By: <u>s/Timothy W. Gresham</u>
     Timothy W Gresham
     VSB No. 21814
     276-628-5151 (voice)
     276-628-5621 (facsimile)
     <u>tgresham@pennstuart.com</u>

## VIII.  <u>REQUEST FOR ORAL ARGUMENT</u>

This case presents several important issues concerning the adjudication of federal black lung claims.  Sea B believes oral argument would assist the Court's adjudication of this claim.

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

1.    This brief has been prepared using:

■    Fourteen point, proportionally spaced, serif typeface. Specify software name and version, typeface name, and point size below:

Word 2007, Times New Roman, 14 point

Twelve point, monospaced typeface. Specify software name and version, typeface name, and point size below:

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations; and the certificate of service, the brief contains:

_____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief of 15 pages for reply brief); OR

■    <u>7,861</u> Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

<u>s/Timothy W. Gresham</u>
Timothy W. Gresham

38

## FILING AND MAILING CERTIFICATE

I hereby certify that on this 26th day of January, 2015, I filed with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit, the required copies of this Brief of Appellant and Joint Appendix via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to counsel below.

The necessary filing and mailing was performed in accordance with the instructions given me by counsel in this case.

/s/ May Serafim
Lantagne Legal Printing
801 East Main Street, Suite 100
Post Office Box 2472
Richmond, VA  23219-2472

Parties Served:

Joseph E. Wolfe, Esq.
Rachel Barnhill, Esq.
Wolfe, Williams, Rutherford
& Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA  24273

Kathleen Kim, Esq.
Gary K. Stearman, Esq.
U.S. Department of Labor
Office of the Solicitor
Suite N-2117
Frances Perkins Building
200 Constitution Avenue, N.W.
Washington, DC 20210